**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

JOHN DOE, an individual,

*Plaintiff - Appellant*,

v.

GRINDR INC.; GRINDR LLC,

*Defendants - Appellees*.

No. 24-475

D.C. No.
2:23-cv-02093-
ODW-PD

OPINION

Appeal from the United States District Court
for the Central District of California
Otis D. Wright II, District Judge, Presiding

Argued and Submitted December 3, 2024
Pasadena, California

Filed February 18, 2025

Before: Jay S. Bybee, Sandra S. Ikuta, and Bridget S. Bade,
Circuit Judges.

Opinion by Judge Ikuta

# SUMMARY[*]

## Communications Decency Act

The panel affirmed the district court's dismissal, as barred by § 230 of the Communications Decency Act, of an action brought by an underage Grindr application user against Grindr Inc. and Grindr LLC, alleging sex trafficking in violation of the Trafficking Victims Protection Reauthorization Act and causes of action under state law.

Under § 230, interactive computer service providers are immune from state law liability when plaintiffs seek to treat those providers as publishers of third-party content. The panel held that § 230 barred the plaintiff's state law claims for defective design, defective manufacturing, negligence, failure to warn, and negligent misrepresentation because those claims necessarily implicated Grindr's role as a publisher of third-party content.

The panel held that the plaintiff failed to state a plausible claim under the Trafficking Victims Protection Reauthorization Act because he did not plausibly allege that Grindr either was a knowing perpetrator of sex trafficking or knowingly benefitted from the sex trafficking. Accordingly, he could not invoke a statutory exception to § 230 immunity under the Allow States and Victims to Fight Online Sex Trafficking Act of 2018.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Carrie Goldberg (argued), Roxanne Rimonte, and Naomi E. Leeds, CA Goldberg PLLC, Brooklyn, New York, for Plaintiff-Appellant.

Ambika Kumar (argued), Davis Wright Tremaine LLP, Seattle, Washington; Adam S. Sieff, Davis Wright Tremaine LLP, Los Angeles, California; for Defendants-Appellees.

Matthew W.H. Wessler and Alisa Tiwari, Gupta Wessler LLP, Washington, D.C.; Jefferey R. White, American Association for Justice, Washington, D.C.; for Amicus Curiae American Association for Justice.

Jacob B. Wolk and Mark Gottlieb, Public Health Advocacy Institute, Boston, Massachusetts, for Amicus Curiae Public Health Advocacy Institute.

Megan Iorio and Tom McBrien, Electronic Privacy Information Center, Washington, D.C., for Amicus Curiae Electronic Privacy Information Center.

Samir Jain, Kate Ruane, and Becca Branum, Center for Democracy & Technology, Washington, D.C., for Amicus Curiae Center for Democracy & Technology.

Kathleen R. Hartnett, Ariana E. Bustos, and Harrison B. Park, Cooley LLP, San Francisco, California; Alexander J. Kasner, Cooley LLP, Washington, D.C.; Aaron Mackey and Sophia Cope, Electronic Frontier Foundation, San Francisco, California; Lawrence G. Walters, Walters Law Group, Longwood, Florida; for Amici Curiae Electronic Frontier Foundation and Woodhull Freedom Foundation.

**OPINION**

IKUTA, Circuit Judge:

Under § 230 of the Communications Decency Act of 1996, interactive computer service providers are immune from state law liability when plaintiffs seek to treat those providers as publishers of third-party content. *See* 47 U.S.C. § 230(c)(1). John Doe alleges that Grindr Inc. and Grindr LLC (collectively "Grindr"), the owners and operators of the Grindr application (referred to herein as the "App"), are liable for injuries that Doe incurred as an underage user of the App. Doe also brings a federal sex trafficking claim under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a). Grindr argues that it is immunized from liability under § 230.

We hold that the district court properly dismissed each of Doe's claims as barred by § 230. Because Doe's state law claims necessarily implicate Grindr's role as a publisher of third-party content, § 230 bars those claims. Doe fails to state a plausible TVPRA claim, so Doe cannot invoke a statutory exception to § 230 immunity. Therefore, we affirm the district court's dismissal of Doe's claims in their entirety.[1]

I

Under § 230 of the Communications Decency Act, "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47

---

[1] We grant the motion to file an untimely amicus curiae brief filed by the Public Health Advocacy Institute. Dkt. No. 25.

U.S.C. § 230(c)(1). "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with" § 230. *Id.* § 230(e)(3). Although § 230 is broad, it does not provide "a general immunity from liability deriving from third-party content." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100 (9th Cir. 2009). As applied to state law claims, it "only protects from liability (1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider." *Id.* at 1100–01. There is no dispute that Grindr is an interactive computer service provider, so we consider only the remaining two prongs.

The second and third prongs of *Barnes* require us to consider each cause of action alleged "to determine whether a plaintiff's '*theory of liability* would treat a defendant as a publisher or speaker of third-party content.'" *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 740 (9th Cir. 2024) (quoting *Barnes*, 570 F.3d at 1101). The second prong requires us to ask whether plaintiff claims that the defendant breached a duty that "derives from the defendant's status or conduct as a publisher or speaker." *Id.* (internal quotation marks omitted). If the duty does not derive from such status or conduct, but rather from another source, then § 230 does not immunize the defendant. *Id.* The third prong requires us to ask whether the cause of action targets "content provided by another." *Barnes*, 570 F.3d at 1102. A defendant loses its immunity to the extent that the cause of action seeks to treat the defendant "as the publisher or speaker of its *own* content—or content that it created or developed in whole or in part—rather than [as] the publisher or speaker of entirely third-party content." *Calise*, 103 F.4th at 744.

## II

Grindr is the owner and operator of the App, which is its namesake dating App for gay and bisexual men. The App matches users based on proximity, and it allows matched users to send direct messages to each other. The App requires users to be over 18, but it does not verify users' ages. Grindr has marketed the App on Instagram and TikTok, social media platforms that are popular with minors. The App is free to download and use; Grindr makes money from the App through ads and paid subscriptions, which provide users with enhanced features.

In the spring of 2019, John Doe was a 15-year-old boy residing in Canada. Doe downloaded and signed up for the App. To use the App, Doe represented that he was over 18 years old. From April 4 through April 7, 2019, the App matched Doe with four adult men. Doe alleges that each adult man raped him on consecutive days. Three of those men later received criminal sentences for their crimes against Doe, while the fourth remains at large.

Doe's First Amended Complaint ("FAC") against Grindr, the operative complaint on appeal, alleged the following six causes of action:

> (1) Defective design, as the App's geolocation function matched adults and children for illegal sexual activity, and safer alternative designs were feasible,
>
> (2) Defective manufacturing, as the App matched adults and children for illegal sexual activity,

(3) Defective warning, as the App did not adequately instruct users about known risks of child sexual abuse,

(4) Negligence, as Grindr owed Doe a duty to avoid matching Doe with adult men who would rape him,

(5) Negligent misrepresentation, as Grindr negligently misrepresented that the App was designed to create a safe and secure environment for its users, and,

(6) Violation of the TVPRA, 18 U.S.C. § 1595, as Grindr directly and knowingly participated in a sex trafficking venture, and knowingly benefitted financially from trafficking.

Grindr moved to dismiss the FAC, arguing that § 230 barred all of Doe's claims.[2]  The district court dismissed the FAC with prejudice, on the ground that all of Doe's state law claims were barred by § 230.  The district court also held that Doe failed to state a TVPRA claim.  Doe timely appealed.

### III

### A

We have jurisdiction to review a final judgment under 28 U.S.C. § 1291.  "We review de novo the district court's decision to grant" a motion to dismiss under Rule 12(b)(6)

---

[2] Grindr also argued to the district court, and argues again on appeal, that the First Amendment barred Doe's state law claims, and that Doe's state law claims were inadequately pleaded.  Because we affirm on the § 230 ground reached by the district court, we do not address Grindr's alternative arguments.

of the Federal Rules of Civil Procedure. *Est. of Bride ex rel. Bride v. YOLO Techs., Inc.*, 112 F.4th 1168, 1174–75 (9th Cir. 2024).

B

Each of Doe's state law claims necessarily implicates Grindr's role as a publisher of third-party content. The theory underpinning Doe's claims for defective design, defective manufacturing, and negligence faults Grindr for facilitating communication among users for illegal activity, including the exchange of child sexual abuse material. Doe claims that Grindr had a duty to suppress matches and communications between adults and children, so as to prevent the harmful sharing of messages between users that could lead to illegal activity. These claims necessarily implicate Grindr's role as a publisher of third-party content, because discharging the alleged duty would require Grindr to monitor third-party content and prevent adult communications to minors.

In *Dyroff v. Ultimate Software Group*, we held that § 230 barred similar state law claims. *See* 934 F.3d 1093, 1097 (9th Cir. 2019). In *Dyroff*, the defendant publisher operated a website that allowed its users to anonymously interact through online communities. *Id.* at 1094–95. A victim purchased tainted drugs from a fellow website user, which led to the victim's fatal overdose. *Id.* at 1095. The plaintiff, victim's mother, alleged that the defendant was liable because its website allowed users to engage in illegal activity, that its algorithm promoted those communications, and that it failed to expel users who engaged in illegal activity. *Id.* We affirmed the dismissal of plaintiff's claims as barred by § 230. *Id.* at 1097–98. Though defendant "used features and functions, including algorithms, to analyze user

posts on [the website] and recommended other user groups," these neutral features were "meant to facilitate the communication and content of others" and were "not content in and of themselves." *Id.* at 1098. Because the defendant acted as a publisher, and third-party communications caused the harm to the victim, the defendant was immune from liability under § 230.

Doe's theory of liability is that Grindr breached its duty not to design or manufacture defective products by failing to prevent a minor from being matched with predators, by matching users based on geographic data it extracted from them, and by allowing Doe to communicate with abusive adults. But, as in *Dyroff*, Doe used "features and functions" of Grindr that were "meant to facilitate the communication and content of others," and the features and functions were "content neutral" on their own. *Id.* at 1098, 1100. Therefore, as in *Dyroff*, § 230 bars the defective design, defective manufacturing, and negligence claims.

Doe's attempts to compare his claims to those in *Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1092–93 (9th Cir. 2021), are unpersuasive. In *Lemmon*, plaintiffs alleged a product defect flowing from "the interplay between [the defendant's] reward system" and a feature on the defendant's app which allowed users to overlay their real-life speed over shared media; this interplay allegedly encouraged users to drive at dangerous speeds. *Id.* at 1088–89, 1092. Defendant allegedly violated a duty to design a reasonably safe product. *Id.* at 1093. We concluded that defendant's alleged violation of this duty had "nothing to do with its editing, monitoring, or removing of the content that its users generate through" the app. *Id.* at 1092 (internal quotation marks omitted). The duty to avoid designing a product that encouraged dangerous driving was "fully

independent of [defendant's] role in monitoring or publishing third-party content," and it did not "seek to hold [the defendant] responsible as a publisher or speaker." *Id.* at 1093. By contrast, the challenged features of the App are not independent of Grindr's role as a facilitator and publisher of third-party content.[3]

Nor can Grindr be held liable for failure to warn. This theory of liability is that Grindr had a duty to warn Doe about the risks of child sexual exploitation on the App. We have held that an interactive computer service provider has a duty to warn a user when the provider is aware of a "known conspiracy operating independent of the site's publishing function." *Est. of Bride*, 112 F.4th at 1181 (citing *Internet Brands*, 824 F.3d at 851). In *Internet Brands*, the plaintiff alleged that the defendant, the owner and operator of a website, knew that two men were using the website to identify targets for a rape scheme. 824 F.3d at 848–49. The plaintiff's failure-to-warn claim was not based on the defendant's failure to remove any user content or on the defendant's publishing or monitoring of third-party content. *Id.* at 851. Rather, the plaintiff faulted the defendant for "failing to warn her about information it obtained from an outside source." *Id.*; *see id.* at 853. We concluded that the plaintiff's claim did not seek to hold the defendant liable as a publisher or speaker of third-party content. *Id.* at 851. Here, by contrast, Doe does not allege that Grindr had independent knowledge of a conspiracy, and Grindr's role as

---

[3] It is analytically insignificant whether Doe's injuries would not have occurred "but for" Grindr's role as a publisher. *See, e.g.*, *Est. of Bride*, 112 F.4th at 1176 n.2 ("[W]e have explicitly disclaimed the use of a 'but-for' test because it would vastly expand § 230 immunity beyond Congress'[s] original intent.") (citing *Doe v. Internet Brands*, 824 F.3d 846, 853 (9th Cir. 2016)).

a publisher of third-party content does not give it a duty to warn users of "a general possibility of harm" resulting from the App. *Est. of Bride*, 112 F.4th at 1181. Therefore, § 230 bars this claim.

Nor can Grindr be held liable for negligent misrepresentation. This theory of liability faults Grindr for stating that it would maintain a "safe and secure environment for its users" on the App but failing to do so. We have held that § 230 does not bar causes of action seeking to enforce contracts or promises unrelated to a defendant's role as a publisher or speaker of third-party content. In *Barnes*, 570 F.3d at 1099, a defendant promised to take down indecent profiles impersonating a plaintiff, and in *Estate of Bride*, 112 F.4th at 1173, a defendant promised to unmask the identities of users sending harassing messages. In each case, the plaintiff sought to hold the defendant accountable for a specific promise or representation, "not for failure to take certain moderation actions," *id.* at 1178–79; *see also Barnes*, 570 F.3d at 1107–09. By contrast, Grindr's general statement that the App is "designed to create a safe and secure environment for its users," is not a specific promise, but a description of its moderation policy, and thus protected from liability under § 230. Moreover, compared to the aforementioned promises, the statement that an interactive computer service provider will create a safe and secure environment is too general to be enforced.

## C

Doe also brings a federal claim under the civil remedy provision of the TVPRA, 18 U.S.C. § 1595(a), which allows an "individual who is a victim of a violation of this chapter" to bring a civil action against either a perpetrator of sex trafficking, or "whoever knowingly benefits, or attempts or

conspires to benefit," from "participation in a venture which that person knew or should have known" was engaged in sex trafficking.

To allow TVPRA lawsuits against online enterprises to go forward, Congress enacted an exception to § 230(c) in the Allow States and Victims to Fight Online Sex Trafficking Act of 2018 ("FOSTA"). *See* 47 U.S.C. § 230(e)(5). As applicable here, the FOSTA exception provides that nothing in § 230 (other than an inapplicable subsection) shall impair or limit any civil action brought under 18 U.S.C. § 1595, "if the conduct underlying the claim constitutes a violation of section 1591 of that title." *See id.* § 230(e)(5)(A). In turn, 18 U.S.C. § 1591 provides in relevant part that any defendant who "knowingly" engages in child sex trafficking, or benefits financially by doing so, shall be punished.

A plaintiff bringing an action under 18 U.S.C. § 1595, as allowed by 47 U.S.C. § 230(e)(5)(A), must plausibly allege that the defendant either was a knowing perpetrator of sex trafficking, or was a person that knowingly benefitted from the sex trafficking. The defendant's "own conduct" must violate 18 U.S.C. § 1591. *Does v. Reddit, Inc.*, 51 F.4th 1137, 1141 (9th Cir. 2022). "Mere association with sex traffickers is insufficient absent some knowing 'participation' in the form of assistance, support, or facilitation." *Id.* at 1145 (citing 18 U.S.C. § 1591(e)(4)).

A defendant's own conduct violates 18 U.S.C. § 1591 when the defendant "actually engaged in some aspect of the sex trafficking." *Id.* (internal quotation marks omitted). Not only must the defendant have actual knowledge of the sex trafficking, but there must be "a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit." *Id.* (citation omitted); *see also A.B.*

*v. Salesforce, Inc.*, 123 F.4th 788, 798–99 (5th Cir. 2024) (holding that the plaintiff's showing that defendant provided "back-office business services to a company it knew (or should have known) was engaged in sex trafficking" was sufficient to show that defendant knowingly benefitted from and assisted in sex trafficking). But turning a blind eye to trafficking that may occur on a platform does not constitute active participation in sex trafficking. *Reddit*, 51 F.4th at 1145–46.

Here, Doe fails to state a TVPRA claim, and therefore FOSTA's carveout to § 230 immunity for such claims does not apply. Doe must plausibly allege that Grindr "knowingly" sex trafficked a person by a list of specified means. 18 U.S.C. § 1591(a)(1). But the FAC merely shows that Grindr provided a platform that facilitated sharing of messages between users. The FAC's allegation that Grindr "knowingly introduces children to adults for in-person sexual encounters," is not supported by any plausible factual allegations. To the contrary, the FAC asserts that Grindr matches users who have represented to the App that they are over eighteen years old. The allegation that Grindr "recruits both children and adults to use" the App does not plausibly allege that Grindr's own conduct perpetrated sex trafficking; rather, it alleges general advertising of the App on social media. At most, the FAC shows only that Grindr "turned a blind eye" to facilitating matches between minors and adults, which is insufficient to show even beneficiary liability. *Reddit*, 51 F.4th at 1145.

Doe's beneficiary theory of TVPRA liability also fails, as the FAC does not plausibly allege that Grindr benefitted from the alleged sex trafficking beyond generally receiving advertising revenues. An interactive computer services provider is not liable as a beneficiary if it merely turns a

blind eye to the source of its revenue; there must be "actual knowledge and a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit." *Id.* (internal quotation marks omitted). Doe's references to Grindr's constructive knowledge of child sexual abuse on its platform do not plausibly allege Grindr's active participation in a sex trafficking venture. The FAC does not causally connect Grindr's advertising revenues with any affirmative conduct by Grindr that furthered the sex-trafficking venture alleged in this case. At most, it alleges that Grindr turned a blind eye to sex trafficking on the App and generally benefitted from sex traffickers' use of the App. Thus, the FAC does not plausibly allege a claim under the TVPRA and the carveout in FOSTA.[4]

In sum, the district court correctly held that Doe's "TVPRA claim, whether direct or beneficiary, fails." Because Doe cannot "plausibly allege that [Grindr's] own conduct violated [18 U.S.C. §] 1591," Doe cannot "invoke FOSTA's immunity exception" to § 230 immunity. *Id.* at 1141. Therefore, § 230 bars Doe's TVPRA claim.

## IV

The district court properly dismissed all of Doe's claims as barred by § 230. Therefore, we affirm the dismissal of Doe's FAC.

**AFFIRMED**.

---

[4] Our conclusion comports with a recent decision of our sister circuit. *See M.H. ex rel. C.H. v. Omegle.com LLC*, 122 F.4th 1266, 1276 (11th Cir. 2024) (per curiam) (holding that the plaintiff failed to plausibly allege that defendant benefitted from participating in a sex trafficking venture because it failed to allege either defendant's actual knowledge or overt participation in sex trafficking).